T.C. Memo. 2012-174

UNITED STATES TAX COURT

STEPHEN S. KYEREME, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 1321-11L.                               Filed June 20, 2012.

P owed over $30,000 in income tax, penalty, and interest for 2004, but as a result of disability P was retired and was in financial hardship. R therefore halted tax collection from P and put P in "currently not collectible" status; but R filed a notice of lien against P and gave P notice of the filing. P requested a collection due process hearing before R's Office of Appeals ("Appeals") pursuant to I.R.C. sec. 6330, during which P stated that the lien notice would make it difficult for P to borrow and would make P more likely to require public assistance. P therefore argued that it was in both P's interest and the public interest for R to withdraw the notice of lien. Appeals issued a notice of determination sustaining the filing of the notice of lien. P petitioned this Court to review that determination, and R moved for summary judgment.

Held: Appeals did not abuse its discretion in sustaining the filing of the notice of lien, and R's motion for summary judgment will be granted.

Stephen S. Kyereme, for himself.

Jeanne Gramling, for respondent.


MEMORANDUM OPINION


GUSTAFSON, Judge: This case is an appeal, pursuant to section 6330(d)(1),[1] by which petitioner Stephen S. Kyereme seeks this Court's review of a determination by the Office of Appeals ("Appeals") of the Internal Revenue Service ("IRS"). That determination sustained the filing of a notice of Federal tax lien ("NFTL") in order to collect Mr. Kyereme's unpaid income tax, penalty, and interest (totaling more than $30,000) for tax year 2004. That determination, reflected in a "Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330" dated December 16, 2010, was made after Appeals conducted a collection due process ("CDP") hearing pursuant to section 6330(c). This matter is currently before this Court on the Commissioner's motion for summary judgment filed under Rule 121.

_____

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code ("Code", 26 U.S.C.), and all Rule references are to the Tax Court Rules of Practice and Procedure.

The specific issue to be decided is whether Appeals abused its discretion in sustaining the filing of the NFTL despite Mr. Kyereme's financial hardship. We hold that Appeals did not abuse its discretion, and we will grant the Commissioner's motion.

## Background

Consistent with the principles of Rule 121 (explained below), we will assume true the allegations favorable to Mr. Kyereme and will make the inferences favorable to him. Those assumed facts are as follows.

### 2004 income tax liability

Mr. Kyereme was a schoolteacher, but disabling health problems forced him to retire. He lacked adequate health insurance, so to cover his expenses he withdrew in 2004 funds that he had previously contributed to his retirement account. The funds so withdrawn were taxable income to him. In a prior case in this Court-- Kyereme v. Commissioner, docket No. 3464-07--we determined that for the year 2004 Mr. Kyereme had a tax deficiency of $20,007 and an accuracy-related penalty under section 6662(a) of $4,001. Mr. Kyereme appealed to the U.S. Court of Appeals for the Fourth Circuit, and that court affirmed our decision on February 10, 2009.

CNC status and lien

By May 2010 Mr. Kyereme's balance due to the IRS for 2004 (including interest) equaled $30,346.50. However, as a result of the financial hardship he was suffering, the IRS placed him in currently not collectible ("CNC") status, thereby determining not to attempt tax collection from him unless and until his financial circumstances changed; and on May 10, 2010, the IRS sent him a letter (which is not in our record) that advised him of his CNC status. But to protect the Government's right to collect tax from any future income or assets Mr. Kyereme might acquire, the IRS filed an NFTL against him and mailed him a copy of that NFTL on May 13, 2010.

CDP hearing

The NFTL advised Mr. Kyereme of his right to request a CDP hearing, and he timely submitted such a request to the IRS on Monday, June 14, 2010, on Form 12153, "Request for Collection Due Process or Equivalent Hearing". Attached to his CDP request was a statement that read as follows:

RE:  Request for Withdrawal of Notice of Federal Tax Lien

Given the suspension of collection actions (IRS letter dated May 10, 2010) based on my financial situation, my uncertain future income and hence the need to borrow from time to time to keep me going so as not to depend on public assistance, I am requesting that the "Notice of Federal Tax Lien" (filed on May 13, 2010), which would adversely

affect my ability to borrow, be withdrawn to serve the best interests of the public.

As I have explained to the IRS, disabling health problems forced me (a teacher who has substantially contributed to society's knowledge pool by educating the youth since 1984) to give up my regular teaching job and health insurance and withdraw my total retirement contribution (75941.96 from 1984 to 2002) in 2004 to help me survive in the short term. Hence, I appealed to the IRS via the letter attached to my 2004 return and the amount withheld was refunded. This has gone a long way to facilitate my struggle to survive in the short run.

All the retirement funds have been spent to keep me going, and even though I depend on occasional uncertain income from online instruction, the lack of benefits and poor enrollment make this source unreliable and inadequate to make ends meet without borrowing from time to time to smooth things out without resorting to public assistance.

Hence, I am optimistic that the NFTL would be withdrawn to ensure a win/win outcome and avoid a lose/lose outcome for me and the public.

The requested CDP hearing took place by telephone on October 12, 2010.

(Mr. Kyereme had been offered a face-to-face conference by letter, but he did not request a face-to-face conference.)  In the determination letter that Appeals issued thereafter, that telephone conference is described as follows:

On October 12, 2010 the date of the conference, the Settlement Officer called you for the hearing and you requested that the lien be withdrawn.  The Settlement Officer explained to you that the lien can be withdrawn only when it is filed in error and is released when the outstanding balance due is paid in full.  Further, the Settlement Officer

explained to you that in your case the lien was filed subsequent to placing your account in currently not collectible status to protect the Government's interest and the lien would remain filed until the outstanding balance due is paid in full. You requested that an exception be made in your case as you were a school teacher and currently the filed lien would impede your ability to borrow money and would create hardship. The Settlement Officer explained to you that lien cannot be withdrawn and asked if you would consider any collection alternative to resolve the outstanding balance due and you said no. The Settlement Officer informed you that your account would be placed in currently not collectible status.

Notice of determination

On December 16, 2010, consistent with the settlement officer's comments made during that telephone conference, Appeals issued a notice of determination that upheld the NFTL (and that left Mr. Kyereme in CNC status). An attachment to the notice of determination explained Appeals' determination as follows:

On your Form 12153 you have requested the NFTL be withdrawn. The Settlement Officer has considered whether any of the criteria for allowing withdrawal of the lien existed in your case.

IRC § 6323(j) allows the withdrawal of a filed notice of lien without full payment and without prejudice under the following conditions:

The filing of the notice of lien was premature or otherwise not in accordance with administrative procedures of the Internal Revenue Service;

The taxpayer had entered into an agreement under IRC § 6159 to satisfy the tax liability for which the lien was imposed by means of installment payments, unless such agreement provides otherwise;

> Withdrawal of the lien will facilitate collection of the tax liability; or
>
> Withdrawal of the lien would be in the best interests of the taxpayer (as determined by the National Taxpayer Advocate) and the United States.

There is nothing in the Collection administrative file that indicates withdrawal of the filed lien should be considered and you have provided no additional information that indicates the withdrawal of the filed lien should be considered. * * *

IRC § 6320 require[s] that the Appeals Office consider whether a proposed collection action balances the need for efficient collection of taxes with the legitimate concern that any collection action be no more intrusive than necessary.

The Appeals Office balanced the competing interests when finding the filing of the NFTL is appropriate. Based on an internal research your account has been placed in currently not collectible status due to hardship. As discussed above, the assessment(s) at issue are valid. Given your inability to meet your necessary living expenses and on grounds of hardship, your account is placed in currently not collectible status; retaining the NFTL balances the need for efficient collection with your concern that the collection action be no more intrusive than necessary.

Tax Court proceedings

On Tuesday, January 18, 2011, Mr. Kyereme timely filed his petition with this Court appealing the notice of determination by Appeals. Consistent with his position during the CDP hearing, his petition stated:

(1) The Determination ignores my issue that not withdrawing the "Notice of Federal Tax Lien" (which adversely affects my ability to borrow) will force me to depend on public assistance.
(2) Withdrawing my retirement contribution (as a life-saving act that led to the tax) and borrowing from time to time to smooth things out have so far helped me survive without depending on public assistance, given my uncertain future income. (3) I am, hence, appealing to the Court to withdraw the lien to serve the best interests of the public by avoiding a lose / lose outcome for me and the public.

That petition (like the other papers in our record) showed that Mr. Kyereme had a South Carolina address.

On April 24, 2012, the Commissioner filed a motion for summary judgment, supported by a declaration to which documents from the administrative record are attached. The Commissioner's motion asserts that the undisputed facts entitle him to judgment, and states:

13. The settlement officer determined that there was no basis to indicate that the notice of tax lien should be withdrawn. (Exhibit G to Declaration).

14. A further review of the settlement officer's report indicates that the settlement officer determined that 1) all requirements of applicable law had been met; 2) all issues raised by the petitioner had been addressed; and 3) the filing of the notice of tax lien balanced the need for efficient collection of the taxes with the concern that the action be no more intrusive than necessary. (Exhibit G to Declaration). I.R.C. § 6330(c) (3). * * *

16. The settlement officer thus acted within the settlement officer's discretion in sustaining the filing of the notice of federal tax lien.

By order of April 25, 2012, the Court directed Mr. Kyereme to file a response to the Commissioner's motion and stated as follows:

If Mr. Kyereme disagrees with the facts set out in the IRS's motion, then his response should point out the specific facts in dispute. If he disagrees with the IRS's argument as to the law, then his response should also set out his position on the disputed legal issues. Q&As that the Court has prepared on the subject "What is a motion for summary judgment? How should I respond to one?" are available at ustaxcourt.gov/taxpayer_info_start.htm#START40 and are printed on the page attached to this order.

Mr. Kyereme complied with that order by submitting an opposition that states as follows:

(1)     The facts of the case, as documented via the respondent's declaration, are not in dispute.

(2)     What is in dispute is the withdrawal of the "Notice of Federal Tax Lien," which is a discretionary tool the respondent may use, but which the petitioner argues is not necessary in this case.

(3)     Based on Internal Revenue Code 6323(j), as summarized in Internal Revenue Service Publication 594, a "Notice of Federal Tax Lien" may be withdrawn if it is in the public interest.

(4)     As explained in the petition, withdrawing my retirement contribution (as a life-saving act that led to the tax) and borrowing from time to time to smooth things out have so far helped me survive without depending on public assistance, given my disabling health problems and hence uncertain future income.

(5)     Also, the suspension of collection implies if my situation improves significantly in the future, and I am able to fully contribute to society as I used to (by teaching the youth), the outstanding

balance would be taken care of. But the "Notice of Federal Tax Lien" (which adversely impacts my credit history) would make such significant improvement in my situation difficult to achieve, and rather force me to depend on public assistance, if I want to keep going.

THEREFORE, petitioner appeals to the Court to withdraw the lien to serve the best interests of the public.

## Discussion

I.    Applicable legal principles

A.    Summary judgment standards

Where the pertinent facts are not in dispute, a party may move for summary judgment to expedite the litigation and avoid an unnecessary trial. Summary judgment may be granted where there is no genuine issue as to any material fact and a decision may be rendered as a matter of law. Rule 121(a) and (b). The party moving for summary judgment (i.e., the Commissioner) bears the burden of showing that there is no genuine issue as to any material fact, and factual inferences will be drawn in the manner most favorable to the party opposing summary judgment (i.e., Mr. Kyereme). See Dahlstrom v. Commissioner, 85 T.C. 812, 821 (1985).

B.    Collection review procedure

When a taxpayer fails to pay any Federal income tax liability after demand,

section 6321 imposes a lien in favor of the United States on all the property of the

delinquent taxpayer, and section 6323 authorizes the IRS to file notice of that lien.

However, the IRS must provide written notice of a tax lien filing to the taxpayer

within five business days.  After receiving such a notice, the taxpayer may request

an administrative hearing before Appeals.  Sec. 6320(a)(3)(B), (b)(1).

Administrative review is carried out by way of a hearing before Appeals pursuant to

section 6330(b) and (c); and, if the taxpayer is dissatisfied with the outcome there,

he can appeal that determination to the Tax Court under section 6330(d), as

Mr. Kyereme has done.

For the agency-level CDP hearing before Appeals, the pertinent procedures

are set forth in section 6330(c).  As relevant here,[2] those procedures require Appeals

to consider three sets of issues:

---

[2]A taxpayer may contest the existence and amount of the underlying tax liability if he did not have a prior opportunity to dispute the tax liability.  Sec. 6330(c)(2)(B).  However, in Mr. Kyereme's previous deficiency case, docket No. 3464-07, he did have a prior opportunity to dispute his liability, and he does not now contend otherwise.  Therefore, Mr. Kyereme's underlying liability for 2004 is not at issue.  Rather, we assume that he is liable for the tax and penalty that this Court previously determined.

First, the appeals officer must obtain verification from the Secretary that the requirements of any applicable law or administrative procedure have been met. Sec. 6330(c)(1).[3] The notice of determination sets forth Appeals' compliance with these requirements, and Mr. Kyereme does not allege any failure of "verification".

Second, the taxpayer may "raise at the hearing any relevant issue relating to the unpaid tax or the proposed levy," including challenges to the appropriateness of the collection action and offers of collection alternatives. Sec. 6330(c)(2)(A). Mr. Kyereme proposed no "collection alternative" (beyond his already granted CNC status); and his sole contention--that Appeals abused its discretion sustaining the lien notwithstanding his financial hardship--pertains to "the appropriateness of the collection action", which we will discuss below.

Third, at the CDP hearing Appeals is to consider "whether any proposed collection action [here, the filing of the NFTL] balances the need for the efficient collection of taxes with the legitimate concern of the person that any collection

---

[3]In the case of the lien notice filed against Mr. Kyereme, the basic requirements, see sec. 6320, for which the appeals officer was to obtain verification are: a timely assessment of the liability, secs. 6201(a)(1), 6501(a); notice and demand for payment of the liability, sec. 6303; and notice of the filing of the lien notice and of the taxpayer's right to a CDP hearing, sec. 6320(a) and (b).

action be no more intrusive than necessary." Sec. 6330(c)(3)(C). Mr. Kyereme's contention may implicate this balancing. See note 4 below.

When Appeals issues its determination, the taxpayer may "appeal such determination to the Tax Court", pursuant to section 6330(d)(1), as Mr. Kyereme has done. In such an appeal (where the underlying liability is not at issue), we review the determination of Appeals for an abuse of discretion. Sego v. Commissioner, 114 T.C. 604, 610 (2000); Goza v. Commissioner, 114 T.C. 176 (2000). That is, we decide whether the determination was arbitrary, capricious, or without sound basis in fact or law. See Murphy v. Commissioner, 125 T.C. 301, 320 (2005), aff'd, 469 F.3d 27 (1st Cir. 2006). "Where * * * we review the Appeals Office's determination to sustain the filing of an NFTL for abuse of discretion, we * * *. * * * do not substitute our judgment for that of the settlement officer, and we do not decide independently whether we believe the lien should be withdrawn. See * * * [Murphy, 125 T.C.] * * * at 320." Hughes v. Commissioner, T.C. Memo. 2011-294, slip op. at 4.

II.    Withdrawing or sustaining the NFTL

Mr. Kyereme asked Appeals to withdraw the IRS's notice of lien. But contrary to his contention,[4] we find no abuse of discretion in Appeals' determination that lien withdrawal is not justified under section 6323(j)(1).  Consistent with the summary given in Appeals' determination, section 6323(j)(1) provides:

> The Secretary may withdraw a notice of a lien filed under this section and this chapter shall be applied as if the withdrawn notice had not been filed, if the Secretary determines that--
>
> (A)    the filing of such notice was premature or otherwise not in accordance with administrative procedures of the Secretary,
>
> (B)    the taxpayer has entered into an agreement under section 6159 to satisfy the tax liability for which the lien was imposed by means of installment payments, unless such agreement provides otherwise,

---

[4]Mr. Kyereme made no explicit contention to the effect that Appeals failed to properly balance intrusiveness against collection pursuant to section 6330(c)(3)(C). However, the considerations underlying Appeals' determination whether the withdrawal of a lien would be in the best interest of the taxpayer and the United States are similar to considerations that might be undertaken in the balancing of intrusiveness under section 6330(c)(3)(C).  A filing of an NFTL (i.e., a public notice of the IRS's claim) is usually less intrusive than a levy (i.e., an involuntary collection of tax, such as a garnishment of wages or a seizure of a bank account); but an NFTL may nevertheless intrude:  It may frustrate or complicate a taxpayer's desire to sell an asset, or (as Mr. Kyereme alleges) it may frustrate his attempt to borrow money, compelling the taxpayer (Mr. Kyereme asserts) to rely on public assistance.

(C)     the withdrawal of such notice will facilitate the collection of the tax liability, or

(D)     with the consent of the taxpayer or the National Taxpayer Advocate, the withdrawal of such notice would be in the best interests of the taxpayer (as determined by the National Taxpayer Advocate) and the United States.

That is, there are four circumstances in which the Secretary has the discretion to withdraw a notice of lien (i.e., he "may", not "shall", withdraw it), but the first three are plainly not present here.  Subparagraphs (A), (B), and (C) have no apparent relevance to Mr. Kyereme's case, and he does not allege that they do.  Rather, his arguments about his and the Government's "interests" seem to invoke principles in subparagraph (D)--i.e., that the withdrawal would be in the best interest of both the taxpayer and the United States.[5]

Mr. Kyereme alleges that the NFTL will impede his ability to borrow money and that if he is unable to borrow, he may be forced--to the detriment of the public

---

[5]Although section 6323(j)(1)(D) contemplates that the National Taxpayer Advocate (NTA) will have made a determination about the taxpayer's best interests, NTA involvement is not always required.  See 26 C.F.R. sec. 301.6323(j)-1(b)(4)(ii), Proced. & Admin. Regs. ("If * * * a taxpayer requests the Commissioner to withdraw a notice and has not specifically requested the National Taxpayer Advocate (or his delegate) to determine the taxpayer's best interest, a finding by the Commissioner that the withdrawal of notice is in the best interest of the taxpayer will be sufficient to support withdrawal").

fisc--to rely on public assistance; but, he says, if he can borrow, then he may not need to do so--to the public's benefit.

We take as a fact that Mr. Kyereme is under financial hardship (to such an extent that the IRS has determined not to collect tax from him at this time), so it is not impossible that his allegations about public assistance might be true. However, Rule 121(d) provides that an opposition to a motion for summary judgment "must set forth specific facts showing that there is a genuine issue for trial", whereas Mr. Kyereme did not state in any detail nor support with any evidence--not even his own affidavit or declaration--the allegations that would fully articulate his contention. Nor did he show that in the agency-level CDP hearing he made specific contentions supported by evidence--a showing he must make before making the contentions here. See Giamelli v. Commissioner, 129 T.C. 107, 115 (2007); 26 C.F.R. sec. 301.6320-1(f)(2), Q&A-F3, Proced. & Admin. Regs.

To evaluate Mr. Kyereme's position that withdrawing the lien would benefit the public fisc, Appeals would have needed to know: the amount of Mr. Kyereme's intended borrowing; the disadvantage to Mr. Kyereme that the filing of the NFTL would actually cause; the type and amount of public assistance for which Mr. Kyereme would be eligible; the likelihood that he would not need that

assistance if the NFTL was not left in place; and the likelihood that the IRS's lien priority would not be superseded by other creditors if the NFTL was withdrawn. So far as our record shows, Appeals was left to surmise the answers to all of these questions. We cannot say that Appeals abused its discretion by rejecting Mr. Kyereme's unsupported contention.

Moreover, even if Mr. Kyereme had made a showing that the NFTL would result in his being forced to rely on public assistance, it would then have been within Appeals' discretion to decide whether it nonetheless did best serve the Government's interest to sustain the filing of the NFTL. To make that decision on the terms Mr. Kyereme suggests, Appeals would have had to make a plenary review of his financial standing with multiple governmental entities, not just the IRS. But the IRS is responsible for the collection of tax, not for the administration of public assistance, and not for evaluating a diffuse governmental interest in the taxpayer's net cash flow with all Government entities, State and Federal. Such an evaluation might be a daunting task, and there is no indication that Congress committed that task to the Federal tax collector in section 6330.

## Conclusion

We conclude that Appeals did not abuse its discretion in determining Mr. Kyereme could not effectively invoke section 6323(j)(1) and that the lien was

no more intrusive than necessary; and we hold that, as a matter of law, the

Commissioner is entitled to the entry of a decision sustaining the determination.

To reflect the foregoing,

<u>An appropriate order and</u>

<u>decision will be entered</u>.